UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT DALE BYRUM and
SUE ANN BYRUM,

       Plaintiffs,

                                          File No. 2:04-CV-101

v.

                                          HON. ROBERT HOLMES BELL

INTERNATIONAL PAPER COMPANY,

       Defendant/Third-Party Plaintiff

v.

SECURITAS SECURITY SERVICES,
USA, INC.,

       Third Party-Defendant.
                                        /

## O P I N I O N

This matter is before the Court on Defendant/Third-Party Plaintiff International Paper Co.'s ("International") motion for summary judgment on Plaintiffs Robert Dale and Sue Ann Byrum's (Byrum) claim for damages arising out of injuries suffered by Mr. Byrum. Byrum alleges that he was injured during a fire fighting training exercise due to International's negligence. This matter was originally filed in Dickinson County Circuit Court against International. In addition to filing an answer, International filed a third-party complaint against Securitas Security Services ("Securitas"), an independent contractor for International and Byrum's employer, for indemnification based upon their services contract. Securitas

timely removed the action to this Court based upon complete diversity of the parties.[1]  For the reasons stated below the Court grants International's motion for summary judgment.

I.

Securitas is an independent contractor that provides security services for International Paper at its Quinnesec, Michigan, paper mill.  Securitas has a multi-level certification program for their employees.  The first certification is Level I and requires that the employee be familiar with all plant procedures regarding security, fire systems, and hazardous materials.  An employee attains Level I after being employed for approximately two years.  Level II certification is obtained after the employee receives medical emergency training.  Finally, Level III certification occurs when an employee completes fire brigade training.  Byrum was hired by Securitas in April 2001 as a plant protection officer.  At the time of Byrum's injury, he had not yet attained Level I.

The relationship between International and Securitas is governed by a contract dated February 15, 2002.  The contract expressly provides that Securitas would provide "all supervision, labor, equipment, and tools" as an independent contractor for International at their paper mill. Exhibit 5, attached to Defendant's Motion for Summary Judgment (Docket #36).  Further the contract states that Securitas "assumes full responsibility for supervising and directing its own employees." *Id*.  Included in the contract was a memorandum outlining

---

[1]Although Plaintiffs' complaint alleges that the amount in controversy exceeds $25,000, at oral argument the parties stipulated that the amount in controversy exceeds $75,000.

the specific duties and obligations of Securitas under the contract. Exhibit 6 ("Scope of Services memorandum") attached to Defendant's Motion for Summary Judgment. The duties range from such run-of-the-mill responsibilities as provision of an appropriate uniform to responsibility for recruiting and processing all potential applicants. This responsibility includes interviewing, background investigation, drug screening, and a post-offer physical examination. *Id*. at I, ¶ M.

The Scope of Services memorandum also outlined the prerequisites for all plant protection officers. Plant protection candidates were required to have pre-employment drug screening as well as post-offer physical examinations. *Id*. at ¶ M. Securitas was responsible for ensuring that the employees received the examinations at company expense. *Id*. at ¶ M, II, ¶ A. Further, before being allowed to participate in International's fire brigade or HAZMAT team, each Securitas employee had to have a health assessment completed. *Id.* at II, ¶ B. This health assessment was also to be at Securitas' sole expense.

Although the contract provided that Securitas would conduct physical exams of each employee upon their hiring, due to the expense of the exams, Securitas and International agreed that Securitas could postpone the physical examination until their employees reached Level II certification. Exhibit 4, Deposition of Dennis Doll at 25-28, attached to Defendant's Brief in Support of Summary Judgment. But even with this modification, Securitas employees still were required to have a physical examination prior to participating in fire

3

fighting training and the plant fire brigade. *Id*. at 100-01, Scope of Services Memorandum II, ¶ B.

The specific events giving rise to this litigation occurred on April 10, 2002. International coordinated a fire training exercise for International and Securitas employees in Green Bay, Wisconsin. Jim Rose, an International employee, designed and supervised the program. Although Byrum had not reached Level I certification (and had not undergone a physical examination), he attended the training exercise. The parties dispute whether International required Byrum's attendance or whether Byrum himself volunteered to attend the training. Dennis Doll, Byrum's direct supervisor with Securitas, testified that 2-3 days prior to the training exercise, Byrum requested permission to attend the training exercise. *Id*. at 43-44. According to Doll, he told Byrum that he did not see the need for him to attend because he had not reached Level I certification. *Id.* Doll did not explain that Byrum could not participate without a physical examination, stating, "I didn't think about it." *Id*. at 82. But Doll told him that he would have to receive Jim Rose's permission in order to attend the training exercise. *Id.* 43-44. Byrum offers his own deposition testimony in which he states Jim Rose mandated that he attend the fire fighting training exercise. Exhibit 2, Deposition of Robert Dale Byrum at 125-26, attached to Plaintiff's Response.

Nevertheless, Byrum attended the program. The training required performance of various fire fighting tasks while wearing full fire fighting gear and a self-contained breathing apparatus. After completing the second training exercise of the day, Byrum was resting

outside the training facility when he began vomiting and feeling a tightness in his chest. An ambulance was summoned and he was taken to a local hospital where the medical staff determined that he had suffered a heart attack. While receiving treatment, Byrum went into cardiac arrest which required CPR, defibrillation, and ultimately, coronary bypass surgery. According to Byrum, as a result of the heart attack and ensuing surgery he has suffered permanent injuries which restrict his current daily life. Byrum contends that his injuries resulted from the breach of a duty owed to him by International to provide a medical examination prior to permitting him to engage in the training program. Before the Court is International's motion for summary judgment on the duty issue.

II.

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005); *Layne v. Bank One, Ky, N.A.*, 395 F.3d 271, 275 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the

motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 301 (6th Cir. 2005).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to come forward with evidence showing that there is a genuine issue of material fact that must go to trial. *Anderson,* 477 U.S. at 256. An issue concerning a material fact is genuine if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Id.* at 248. To sustain this burden, a plaintiff may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *Daniel v. Cantrell*, 375 F.3d 377, 381 (6th Cir. 2004). Rather, the party opposing a motion for summary judgment has the burden to come forth with requisite proof to support his legal claim, particularly where he has had an opportunity to conduct discovery. *Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient to create a genuine issue of material fact. *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004).

III.

The elements of a prima facie case of negligence are well known. The plaintiff must establish a duty owed by the defendant, a breach of that duty, causation, and damages. *See e.g.*, *Case v. Consumers Power Co.*, 463 Mich. 1, 6, 615 N.W.2d 17, 20 (2000). Although Byrum asserted in his complaint that International failed to provide a safe work environment,

negligently supervised the training exercise, and failed to warn him of hazardous equipment, he has not produced any evidence supporting these allegations. Accordingly, these allegations are no longer before this Court. *Daniel*, 375 F.3d at 381 ("a non-movant 'may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue of material fact for trial.'") (quoting *Anderson*, 477 U.S. at 256). Essentially, Byrum's negligence claim rests on whether International owed him a duty to provide a physical examination prior to his participation in the fire fighting training exercise.

International asserts that they did not owe Byrum a duty to provide a physical examination. International raises two arguments in support of their motion for summary judgment. First, they argue that Byrum cannot establish liability based upon the "inherently dangerous activity" exception to the general rule that a person who hires an independent contractor is not liable for injuries that the contractor negligently causes. *See Deshambo v. Nielsen*, 471 Mich. 27, 684 N.W.2d 332 (2004). Second, International contends that they did not have a duty to provide a physical examination to Byrum because, under their contract with Securitas, it was the independent contractors' duty to provide medical examinations of its employees prior to engaging in fire fighting activities.

    A. The "Inherently Dangerous Activity" Exception

In his complaint, Byrum alleges he was engaged in inherently dangerous work at the time of his injury. See Docket #1, Exhibit A, Plaintiff's Complaint ¶ 7. Byrum concedes that

he was injured while in the scope of his employment with Securitas, an independent contractor for International. Under Michigan law a person who hires an independent contractor is not liable for injuries that the contractor negligently causes. *Deshambo,* 471 Mich. at 31, 684 N.W.2d at 335; *Locke v. Mach*, 115 Mich. App. 191, 194, 320 N.W.2d 70, 71 (1982). Although this is the general rule, exceptions have developed over time, such as the "inherently dangerous activity" doctrine. This exception holds an employer responsible for the harm caused by a contractor's negligence where the work contracted for "'necessarily [involved] danger to others, unless great care is used' . . . or where the work involves a 'peculiar risk' or 'special danger' . . . ." *Bosak v. Hutichinson*, 422 Mich. 712, 727-28, 375 N.W.2d 333, 340 (1985) (quoting *Inglis v. Millersburg Driving Ass'n*, 169 Mich. 311, 321, 136 N.W. 443 (1912); RESTATEMENT (SECOND) OF TORTS §§ 416, 427).

Over time this exception was extended to include liability on the part of the owner for injuries to employees of the independent contractor performing the dangerous work, in addition to innocent third parties. *See McDonough v. Gen. Motors Corp.*, 388 Mich. 430, 201 N.W.2d 609 (1972); *Butler v. Ramco-Gershenson, Inc.*, 214 Mich. App. 521, N.W.2d 912 (1995); *Vannoy v. City of Warren*, 15 Mich. App. 158, 166 N.W.2d 486 (1968). In *Deshambo*, however, the Michigan Supreme Court limited the application of this exception to injuries to innocent third parties caused by the negligence of an independent contractor. 471 Mich. at 41, 684 N.W.2d at 340. The court clarified that when an employee of an independent contractor is injured by his own negligence or the negligence of a fellow

employee, the employer is not liable "merely because the activity involved is inherently dangerous." *Id*. at 38.

International contends that *Deshambo* precludes Byrum's claim against them. International first argues that because Byrum was engaged in a training program, rather than active fire fighting, he was not involved in an inherently dangerous activity. Although an argument could be made that a training exercise is not inherently dangerous because it is a controlled environment, the Court will assume that it was an inherently dangerous activity. Even assuming that the training exercise was inherently dangerous, Byrum is precluded from asserting that International is liable for his injury. Under the general rule, an employer is not liable for an injury to an employee of an independent contractor where the employee negligently injures himself or is injured by the negligence of his fellow employee. *Deshambo*, 471 Mich. at 38, 684 N.W.2d at 339. International does not argue that Byrum negligently injured himself, however, they do allege that his injury was caused by the negligence of his employer, Securitas. International has produced evidence demonstrating that Byrum's injury resulted from Securitas' negligence in failing to require that he undergo a medical examination before participating in the training exercise.

Dennis Doll, Byrum's immediate supervisor with Securitas, testified that under the agreement between International and Securitas, it was Securitas' responsibility to provide their employees with a physical examination prior to participating in fire fighting training and International's fire brigade. *See* Scope of Service Memorandum II, ¶ B, Dep. of Doll at 70-

9

71, 100-01. Doll also testified that Securitas employees were not permitted to engage in fire fighting training unless they had a physical examination. Dep. of Doll at 101. Further, Doll testified that when the April 2002 training exercise was announced it was an oversight on his part that Byrum was included in the exercise without having undergone a prior physical evaluation. Doll Dep. at 82, 101. Therefore, in light of the fact that Securitas had a duty to provide physical evaluations of their employees prior to participation in fire fighting activities as well as Doll's testimony that he did not require that Byrum undergo a medical examination before the April 2002 training exercise, it was Securitas' negligence that lead to Byrum's injury.[2] Accordingly, Byrum is precluded from asserting a claim against International based upon the inherently dangerous activity because he is an employee of Securitas, International's independent contractor. *See Deshambo*, 471 Mich. at 38, 684 N.W.2d at 339.

  B. Voluntary Assumption of a Duty to Provide a Physical Examination

  Byrum principally argues that International voluntarily assumed an independent duty to provide physical examinations to Securitas' employees prior to their participation in fire fighting training by including the Securitas' employees in the training program. International acknowledges that by offering the training session they assumed a duty to ensure that the

---

[2] The fact that Doll told Byrum to seek Jim Rose's permission to attend the training session does not change this analysis. As an employee of International, Rose did not have the authority or means to determine if Byrum was qualified to participate in fire fighting training. *See* Dep. of Rose @ 26, 78-79. As stated previously, Securitas' was responsible for the physical examinations of their employees.

content of the exercise was safe and that participants were safely transported to and from the training site.  But International disputes that this duty included providing a physical examination to Securitas' employees *prior* to participation in the program.

The existence of a legal duty is a question of law. *Valcaniant v. Detroit Edison Co.*, 470 Mich. 82, 86, 679 N.W.2d 689, 691 (2004).  In determining whether a duty exists, courts often consider multiple factors, including the parties' relationship and the foreseeability and nature of the risk.  *See Id.*, *Schultz v. Consumers Power Co.*, 443 Mich. 445, 450, 506 N.W.2d 175, 178 (1993) (citing *Buczkowski v. McKay*, 441 Mich. 96, 100, 490 N.W.2d 330 (1992)).  The primary concern is whether there is a sufficient relationship between the plaintiff and defendant.  *Id.* (quoting *Samson v. Saginaw Prof. Bldg. Inc.*, 393 Mich. 393, 406, 224 N.W.2d 843 (1975)).  Such a relationship may exist if a defendant has undertaken to render a service to another.  "If one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner." *Fultz v. Union-Commerce Assoc.*, 470 Mich. 460, 465, 683 N.W.2d 587, 591 (2004) (citing *Home Ins. Co. v. Detroit Fire Extinguisher Co., Inc.*, 212 Mich. App. 522, 529, 538 N.W.2d 424 (1995); *Osman v. Summer Green Lawn Care, Inc.*, 209 Mich. App. 703, 532 N.W.2d 186 (1995); KEETON, PROSSER & KEETON, TORTS, § 56, pp. 380-81 (5th ed., 1984)).

Byrum argues that by providing fire fighting training, International voluntarily assumed a duty that included ensuring that the Securitas' employee participants received a physical examination prior to the exercise.  The Court does not agree.

11

The best evidence that International did not assume a duty to provide a medical evaluation to Securitas' employees prior to the fire fighting training, is the contract between International and Securitas. The contract expressly places this duty upon Securitas. *See* Scope of Services Memorandum I § M, II § A, B, Attachment B. Under the contract, Securitas has full responsibility for supervising and directing its employees. *See* Exhibit 5 attached to Defendant's Motion for Summary Judgment. Moreover, in the Scope of Services Memorandum, Securitas is specifically given the responsibility of providing physical examinations, at their expense, to their own employees. *See* Scope of Services Memorandum I ¶ M. Again in Section II of the memorandum, Securitas employees are required to have physical examinations prior to participating in fire fighting training and the fire brigade. *Id*. at II ¶¶ A, B.

Byrum argues that the contract is not applicable to this case because the physical examination requirement had been postponed until after a Securitas' employee reached Level II certification, and he was only at Level I. Doll explained that after the contract was entered into between Securitas and International, the parties agreed that, due to the expense of the physical examinations, Securitas could postpone the examinations until after their employees reached Level II. Dep. of Doll at 25-26, 70. Although the physical examinations were postponed, it was still clear that Securitas was required to provide them before their employees were allowed to participate in fire fighting. Dep. of Doll at 100-01; Scope of Services Memorandum II, ¶ B. And there is no evidence that this modification of the

contract altered the duty of providing the physical examinations to the employees from Securitas to International. Therefore, the contract is relevant to Byrum's case and is dispositive on the question of the duty to provide a physical examination prior to participating in fire fighting training.

The Court finds that a recent Michigan Supreme Court decision, *Fultz v. Union-Commerce Assoc.*, 470 Mich. 460, 683 N.W.2d 587 (2004), is instructive on this case. In *Fultz*, plaintiff slipped and injured her ankle in an ice-covered parking lot. 470 Mich. at 462, 683 N.W.2d at 589. Plaintiff asserted a negligence claim against the parking lot owner and an independent contractor who had contracted with the lot owner to provide snow and ice removal. *Id.* The court reversed the decision of the court of appeals affirming the jury verdict for plaintiff against the independent contractor. *Id.* The court determined that lower courts should analyze tort actions based upon a contract by using a "separate and distinct" analysis. *Id.* at 467, 683 N.W.2d at 592. That is, "the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual allegations." *Id.* The court held that plaintiff's claim failed because she failed to allege an independent duty separate and distinct from the contract. *Id.* at 468, 683 N.W.2d at 592.

Similarly in this case, Byrum has failed to allege a duty owed to him by International that was separate and distinct from the contract between International and Securitas. As stated previously, under the contract Securitas was responsible for ensuring that their

13

employees received medical examinations prior to participating in fire fighting training. Byrum does not allege any duty separate and distinct from this duty.

Michigan's Administrative Code also reinforces the conclusion that the duty to provide Byrum with a physical examination prior to participating in fire fighting activities was upon Securitas, not International. Rule 7310 sets forth the responsibilities of an employer who has a fire brigade. MICH. ADMIN. CODE R. 408.17310. Rule 7310(2) states "*[t]he employer shall assure* that employees who are expected to do structural fire fighting are *physically capable* of performing duties which may be assigned to them during emergencies." MICH. ADMIN. CODE R. 408.17310(2) (emphasis added). Thus, according to the administrative code, Securitas is responsible for ensuring that Byrum was physically capable of participating in the fire brigade and fire fighting training.

Byrum also contends that the Court should impose a duty on International based upon prior knowledge of his condition. In his deposition Byrum explained that in October 2001, he participated in a fire fighting course which utilized a self-contained breathing apparatus. Jim Rose witnessed the course. During the class, Byrum complained of shortness of breath. Dep. of Byrum at 53. Byrum argues that this demonstrates that International had prior knowledge of his heart condition. The Court does not agree. While shortness of breath may be a symptom of a greater heart problem, that is simply one of countless reasonable possibilities that could be drawn from the episode. It could be a symptom of any manner of things, including merely that the exercise required a high degree of exertion. Such tenuous

14

evidence does not demonstrate that International had prior knowledge of his condition. More importantly, it does not create a genuine issue of fact for trial in this case.

Byrum's best argument for imposing a duty is his allegation that International, through Jim Rose, mandated that he attend the training session. In his deposition, Byrum explained that prior to April 10, 2002, an email was posted that required Byrum's crew to attend the fire fighting training session. *Id.* at 125. Further, Byrum stated that Jim Rose told him he had to attend the session. *Id.* at 126. This version of events is disputed by International through Dennis Doll's deposition, in which he explained that Byrum asked Doll if he could participate in the session. Dep. of Doll at pg. 43. On its face this appears to create an issue of fact for the jury. Upon review, however, the Court finds that whether Jim Rose mandated that Byrum attend the training or Byrum asked to be included, is not material to the issue of whether International owed a duty to provide Byrum a physical examination. *See Anderson*, 477 U.S. at 248.

Even assuming International required Securitas employees to attend the training, this did not alter the terms of the contract or relieve Securitas of its obligation to insure that their employees who were attending the fire fighting training had a prior health assessment. Assuming that Rose gave Byrum permission to attend the training, Rose did not have the authority or means to determine if Byrum had received his physical examination and could attend the training. Rose explained that although he was aware that Securitas' employees were required to have a physical examination before participating in fire fighting, he did not

15

have any authority to determine which contractor employees actually had a health assessment. Dep. of Rose at 24, 26. Further, Rose testified that it was his understanding that Securitas "was responsible for insuring that their people did have the physicals." *Id*. at 78. Thus, even if Rose permitted Byrum to attend the training session, the duty to ensure that Byrum was qualified to attend by having a physical examination was still upon his employer, Securitas.

Finally, the Court notes that Byrum has failed to provide any case law or authority imposing a duty such as this on an employer of an independent contractor. The Court is mindful that when it is placed in the position of applying state law in a diversity case, it should not expand liability of its own accord. *See Combs v. International Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (noting that federal courts "must proceed with caution in making pronouncements about state law.") (quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999)). Therefore, "[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path." *Id.* (quoting *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994)). In the absence of clear authority requiring that an employer of an independent contractor provide physical examinations to the contractor's employees, especially where that particular duty has been expressly placed upon the contractor, the Court will refrain from imposing such a duty upon International.

Accordingly, the Court holds that International did not owe a duty to Byrum to provide him with a physical examination prior to his participation in the April 10, 2002, fire fighting training exercise. Because Byrum has failed to establish the duty element of a prima facie case of negligence, his claim must be dismissed.[3]  An order will be entered consistent with this opinion.

Date:     May 19, 2005              /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff Sue Ann Byrum's loss of consortium claim is also dismissed because it is derivative of her husband's claim.  *See, e.g. Fultz*, 470 Mich at 461, 683 N.W.2d at 589.